**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | |
| | ) | **Criminal Case No. CR-19-00028-RAW** |
| **v.** | ) | |
| | ) | **Civil Case No. CV-22-00008-RAW** |
| **RAFAEL TORRES,** | ) | |
| | ) | |
| **Defendant/Movant.** | ) | |

**<u>ORDER</u>**

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Rafael Torres ("Defendant"). [CR Doc. 104; CV Doc. 1]. The Government filed a brief in opposition to Defendant's § 2255 motion. [CR Doc. 117]. Defendant did not file a reply.

On March 13, 2019, a grand jury returned an Indictment charging Defendant with kidnapping in violation of 18 U.S.C. § 1201(a)(1) ("Count 1"), interference with commerce by robbery in violation of 18 U.S.C. § 1951 ("Count 2"), carjacking in violation of 18 U.S.C. § 2119(1) ("Count 3"), use, carry, and brandish a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count 4"), and felon in possession of firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 5"). [CR Doc. 2]. Robert S. Williams, Assistant Federal Public Defender, was appointed to represent Defendant. Defendant pleaded not guilty to the charges at his arraignment held on March 27, 2019. [CR Doc. 12]. In June of 2019, Mr. Williams filed a motion to withdraw, which was granted following a hearing. [CR Docs. 36, 39, and 40].

On June 18, 2019, Martin Hart entered his appearance as counsel of record on behalf of Defendant. [CR Doc. 37]. On November 5, 2019, Defendant pleaded guilty to Counts 1, 2, and 5 without a plea agreement. [CR Doc. 61]. The following exchange occurred at the change of plea hearing before United States Magistrate Judge Steven P. Shreder:

MR. HART: So on February the 3rd, 2019, within the Eastern District of Oklahoma, did you kidnap and carry away a person known in the indictment as J.S.?

DEFENDANT: Yes.[1]

MR. HART: And was the purpose of you kidnapping him to use his truck, his - - he was driving a wrecker. And so you forced him against his will to let you in the wrecker and drive away?

DEFENDANT: Yeah.

MR. HART: And when you drove during that period of time - - and this started in Eufaula, Oklahoma; correct?

DEFENDANT: Yes.

MR. HART: And that's in the Eastern District of Oklahoma; correct?

DEFENDANT: Yes.

MR. HART: And so this incident started out in Eufaula, Oklahoma; correct?

DEFENDANT: Yes.

MR. HART: All right. And it ended up in the state of Arkansas; correct?

DEFENDANT: Yes.

MR. HART: He drove you various parts of eastern Oklahoma. He drove you, and you ended up at your direction in Arkansas?

DEFENDANT: Yes.

MR. HART: So by taking his wrecker and making him drive you, you agree that you deprived the owner of the wrecker, which was Morgan's Towing and Recovery, the use of their wrecker?

DEFENDANT: Yes.

MR. HART: In other words, they weren't able to use it like they normally would?

DEFENDANT: No.

---

[1]     "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

MR. HART: And so they lost money as a result of that?

DEFENDANT: Yes.

MR. HART: And that truck, as far as you know, and that business was involved in interstate commerce?

DEFENDANT: Yes.

MR. HART: And on the same date, you possessed a firearm; correct?

DEFENDANT: Yes.

MR. HART: And you have had felony convictions in the past; correct?

DEFENDANT: Yes.

MR. HART: And you knew that you shouldn't have a firearm?

DEFENDANT: Yes.

MR. HART: And you can't legally have a firearm?

DEFENDANT: Yes.

[CR Doc. 111 at 18-20].

Defendant also answered questions from the Government, and Judge Shreder made the following findings:

THE COURT: The court finds that Mr. Torres was mentally competent to understand and appreciate the acts he committed on or about the date alleged in the indictment, and to realize the nature, purpose, and consequences of his actions at the time they were committed. The court's also satisfied Mr. Torres is fully aware of what he's doing, that he's knowingly, intelligently and willfully waiving his right to a trial and pleading guilty as to Counts 1, 2 and 5.

Mr. Torres, based on your admissions, your demeanor, your clear and responsive answers to my questions, the court finds that there is a factual basis for your plea of guilty, and that your plea of guilty is made voluntarily and with your understanding of the charges against you, and with your knowledge of the consequences of your plea.

Therefore, the court accepts your plea of guilty and finds that you are guilty of the charges contained in Counts 1, 2 and 5 of the indictment.

[CR Doc. 111 at 24-25].

Soon thereafter, on November 14, 2019, Defendant pleaded guilty to Count 4 without a plea agreement.  [CR Doc. 68].  The following exchange occurred at the change of plea hearing before Judge Shreder on November 14, 2019:

THE COURT: Do you understand that I have to be satisfied there's a factual basis for your guilty plea before I can accept it?

DEFENDANT: Yes.

THE COURT: If that is your understanding, please tell me what it is you did, that is how did you commit the acts in connection with the charge against you?

DEFENDANT: On February 3rd, 2019 in Eufaula, Oklahoma, which is in the Eastern District of Oklahoma, I used a firearm during commission of criminal violence, specifically interfering with commerce by robbery in Count 2 to which I had already pled guilty, and I know that I can be and have been prosecuted for that offense of the United States.

THE COURT: Okay. You used a firearm in relation to a crime of violence; is that correct?

DEFENDANT:  Yeah.

THE COURT: You knew – you knew that it was wrong to use that gun in connection with a crime of violence?

DEFENDANT:  Yes.

THE COURT: Okay.  And the gun – do you understand that gun wasn't produced in Oklahoma?  It came from outside the state.

DEFENDANT: Yes.

THE COURT:  Do you think we covered all the elements, Ms. McAmis?

MS. McAMIS:  Your Honor, I apologize because I wasn't able to hear him very well, and so we may have.  But to be clear, I want to ensure that the defendant stipulates that he did, in fact, commit the elements of a crime of violence prosecutable in federal court, and that the use or carrying or brandishing of the firearm was during and in relation to, or was in furtherance of the defendant's crime of violence.

THE COURT: That's what you were talking about when you talked about the Count 2, isn't it, Mr. Torres?  That's the crime of violence you were talking about?

MR. HART:  When you said - - you mentioned Count 2 to the Judge and you told him you'd already pled guilty to Count 2.

THE DEFENDANT:  Yes.

THE COURT: Okay.  Now, you read that from a statement that I know Mr. Hart helped you prepare, but that's your story, isn't it?

DEFENDANT:  Yeah.  Yes.

THE COURT:  It's really what happened?  It's the truth?

DEFENDANT:  Yes, it is.

THE COURT:  Okay.

MS. McAMIS:  Your Honor, I apologize for interrupting.

THE COURT:  That's okay.

MS. McAMIS: But for the purposes of the record, I want to ensure also that the defendant is specifically stipulating that he brandished the firearm, and specifically brandishing, if he needs a definition of that, is, with respect to the firearm, displaying all or part of the firearm or otherwise made the presence of the firearm known to another person in order to intimidate that person regardless of whether the firearm was directly visible to that person.

THE COURT:  Is that true, sir?

DEFENDANT:  Yes.

[CR Doc. 112 at 14-17].

A draft presentence investigation report ("PSR") was prepared by the probation office and filed on January 31, 2020.  [CR Doc. 73].  Based upon a total offense level of 29 and a criminal history category of IV, the guideline imprisonment range was 121 months to 151 months.  [*PSR* at ¶ 65].  The PSR further noted that "the term of imprisonment on Count Four is 84 months consecutive to that range."  *Id*.

On March 3, 2020, Mr. Hart filed an emergency motion for psychiatric/psychological evaluation of Defendant.  [CR Doc. 74].  The United States Marshal's Office, and the Pittsburg County Jail Nurse, had evidently informed Mr. Hart that Defendant attempted to commit suicide,

and "was, and is, hearing voices." *Id*. at 1.  The court granted the motion, and Defendant was transferred to a Federal Medical Center for further examination.

Defendant filed a *pro se* motion with the court on June 23, 2020, alleging that he was having problems with Mr. Hart.  [CR Doc. 82].  Defendant requested the court to appoint substitute counsel.  Mr. Hart subsequently filed a motion to withdraw on June 29, 2020, which was granted.  [CR Docs. 85 and 86].

On July 16, 2020, D. Michael Littlefield entered his appearance as counsel of record on behalf of Defendant.  [CR Doc. 87].  A medical evaluation was prepared by a forensic psychologist at FMC Devens, and it was filed under seal on August 31, 2020.  [CR Doc. 88].  Defendant appeared with Mr. Littlefield for a competency hearing on September 30, 2020.  [CR Doc. 90].  Defendant stipulated to the findings in the sealed medical evaluation, and the court found that Defendant was "mentally competent to stand trial, as he is able to understand the nature and consequences of the proceedings against him and assist properly in his defense."  [CR Doc. 91].

Mr. Littlefield thereafter objected to several paragraphs within the draft PSR.  A final PSR was filed on October 26, 2020.  [CR Doc. 94].  Defendant's total offense level, criminal history score and guideline range did not change.  A revised final PSR was filed on November 19, 2020.  [CR Doc. 99].  A written statement from the victim was attached to the PSR.  *Id*. at 22.  Again, Defendant's total offense level, criminal history score and guideline range did not change.

Defendant appeared with Mr. Littlefield for sentencing on November 19, 2020.[2]  [CR Doc. 97].  The court confirmed that Mr. Littlefield had reviewed the PSR with Defendant.  The court ruled on Defendant's objections and found the PSR would form the factual basis for sentencing.  The court further confirmed there was no plea agreement in the case.  The court inquired if any victims were present.  The Government responded that the victim was present, did not wish to make an oral statement and stands on written statement.  The court advised that it had read the written statement.  Counsel for the Government, Mr. Littlefield, and Defendant each addressed the court.  Defendant was committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 125 months on Count 1, 125 months on Count 2, 84 months on

---

[2]     The sentencing hearing has not been transcribed but was recorded.

Count 4, and 120 months on Count 5, with the terms of imprisonment on Counts 1, 2, and 5 to be served concurrently, and the term of imprisonment on Count 4 to be served consecutive to Counts 1, 2, and 5.  [CR Doc. 101 at 2].  Count 3 was dismissed.  Judgment was entered on November 20, 2020.  Defendant did not file a direct appeal.

Defendant's § 2255 motion was filed on January 6, 2022.[3]  [CR Doc. 104].  Defendant claims his "plea was not knowingly, intelligently and [sic] entered as a result of ineffective assistance of counsel."  [CR Doc. 104 at 4].  Attached to his motion is a declaration of Defendant and a memorandum of law in support of his § 2255 motion.  Defendant contends that he "did not commit the crimes alleged in the indictments [sic]."  [CR Doc. 104-1 at 3].  Defendant alleges that Mr. Hart "failed to investigate his case or show any interest in showing evidence of Mr. Torres's innocence, but insisted on Mr. Torres taking a plea agreement."  [CR Doc. 104-2 at 2].  Defendant alleges that he "didn't fully understand what Mr. Hart reasons was [sic] why he didn't investigate my case and file some motions to suppress the evidence."  [CR Doc. 104-1 at 3].  He claims that he "did not want to plea [sic] guilty, but was coerce [sic] into pleading guilty in fear of counsel's advice that he would be sentenced to 30 years if he went to trial and lost."  [CR Doc. 104-2 at 2].  Defendant contends that after he pleaded guilty, "his Counsel violated attorney and client privilege by giving legal documents" to Defendant's family without consent.  *Id*.  Defendant further claims that, "[b]efore sentencing Mr. Torres found out that his first Attorney, Mr. Martin Hart misadvised him of his sentencing guidelines exposure if he went to trial and lost and if he plea [sic] guilty."  *Id*.

In response, the Government contends that the claims are procedurally barred.  [CR Doc. 117 at 12].  In particular, the Government asserts that one of Defendant's claims (that he did not commit the crimes alleged in the Indictment) is defaulted because he "failed to raise it on

---

[3]     The Government notes that "Defendant had until December 3, 2021, to timely file his § 2255 motion," and that "Defendant's motion was not received by the Court until January 6, 2022."  [CR Doc. 117 at 11].  Still, the Government concedes that "Defendant's declaration under penalty of perjury appears to satisfy the 'prison mailbox rule', as he alleges it was placed in the mailing system prior to the December 3, 2021 deadline."  [CR Doc. 117 at 12].  The Government further concedes that "his current motion appears to be timely, although his language does not precisely track Rule 3(d)(2)."  *Id*.  Under the circumstances, the court finds that the motion is timely.

appeal." *Id.* at 13. The Government also contends that Defendant cannot establish ineffective assistance of counsel. *Id.* at 14. Defendant's claims, according to the Government, "are unsubstantiated by the record and fail to meet the standard of ineffective assistance of counsel as set forth in *Strickland*." *Id.* at 16. Attached to the Government's brief is an affidavit provided by Mr. Hart.[4] [CR Doc. 117-1].

The court will first consider whether Defendant's claims are procedurally barred. In the case at hand, Defendant alleges, in passing, that he did not commit the crimes alleged in the Indictment. He did not raise the issue on appeal. Nor does he refer to any evidence to support his allegations.

"A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule. Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice. Insofar as Defendant is attempting to allege an actual innocence claim (or test the legality of other matters which should have been raised on direct appeal), such claim is procedurally barred. Defendant's claims, however, appear to be based on ineffective assistance of counsel. Defendant's ineffective assistance claims are not procedurally barred and can be reviewed on the merits.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

[4]   Mr. Hart states that, since 1979, he has worked in the Tulsa County Public Defender's Office, Federal Public Defender's Office for the Northern and Eastern Districts of Oklahoma, and private practice. [CR Doc. 117-1 at 1]. He worked with the Federal Public Defender's Office for the Northern and Eastern Districts of Oklahoma from June 2012 through November 2014. *Id.* Since 2014, Mr. Hart has been in private practice "wherein the majority of [his] practice consists of federal criminal defense." *Id.*

Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

### *Alleged Failure to Investigate and Suppress Evidence*.

Defendant alleges that Mr. Hart "failed to investigate his case or show any interest in showing evidence of Mr. Torres's innocence, but insisted on Mr. Torres taking a plea agreement." [CR Doc. 104-2 at 2]. He also claims he "didn't fully understand what Mr. Hart reasons was [sic] why he didn't investigate my case and file some motions to suppress the evidence." [CR Doc. 104-1 at 3]. In response, the Government contends in part that the ineffective assistance claim lacks merit. [CR Doc. 117 at 17]. The Government cites *Hill v. Lockhart*, 474 U.S. 52 (1985), arguing that "Defendant fails to establish how this alleged failure to investigate the case would have affected his decision to plead guilty." *Id*. The

Government further alleges that, "[g]iven the weight of the evidence the Government would have presented at trial, it is unlikely that a jury would have found Defendant not guilty." *Id*.

In *Hill v. Lockhart*, the Supreme Court explained that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.  In the case at hand, Defendant fails to identify what investigative tactics should have been conducted or explain how such alleged failure to investigate would have changed his decision to plead guilty.  Nor does he direct the court's attention to potentially exculpatory evidence.

As noted above, an affidavit from Mr. Hart is attached to the Government's brief. Mr. Hart unequivocally claims under oath that "Mr. Torres never advised me he was innocent and wanted to go to trial."  [CR Doc. 117-1 at 2].  Moreover, despite Defendant's claims to the contrary, Mr. Hart states that he reviewed the discovery and "discussed with [Defendant] that the evidence against him strongly supported, rather than refuted the charges contained in the Indictment."  *Id*.  Indeed, the evidence against Defendant was straightforward and overwhelming.  See PSR [CR Doc. 99] and written victim statement attached thereto. Defendant also complains that Mr. Hart did not file a motion to suppress, but Defendant fails to identify what evidence Mr. Hart should have suppressed.  Mr. Hart states that, "[b]ased on [his] experience, [he] made an educated decision not to file a motion to suppress based on the nature of evidence against [Defendant] in the case and legal authority at the time."  [CR Doc. 117-1 at 2].  The Government argues, and the court agrees, that Mr. Hart "could not be deemed ineffective for failing to raise issues that did not exist."  [CR Doc. 117 at 18].  Defendant fails to show that Mr. Hart was ineffective for failing to investigate and suppress evidence.

## *Alleged Coercion to Plead Guilty*.

Defendant also alleges that he was coerced to plead guilty.  He claims that he "did not want to plea [sic] guilty, but was coerce [sic] into pleading guilty in fear of counsel's advice that

he would be sentenced to 30 years if he went to trial and lost." [CR Doc. 104-2 at 2]. The Government contends the claim "is unsubstantiated by the record, is contradicted by counsel's recollection of the proceedings, and fails to the meet the requirements of *Strickland*." [CR Doc. 117 at 18].

At arraignment, Defendant acknowledged that he received the Indictment and had been given the opportunity to discuss it with counsel. [CR Doc. 12]. Defendant was represented at the time by Robert S. Williams, Assistant Federal Public Defender. *Id*. Defendant was advised of his constitutional rights, charges and possible penalties. *Id*.

On June 18, 2019, Mr. Hart entered his appearance as counsel of record on behalf of Defendant. Mr. Hart claims that, prior to the change of plea hearings, he informed Defendant of the charges against him, the Sentencing Guidelines estimate, and the risks of proceeding to trial. Mr. Hart, in his affidavit, more specifically states as follows:

> 9. Prior to pleading guilty to Counts 1, 2, and 5, I met with Mr. Torres numerous times and informed him of the charges contained in the Indictment, the possible penalties, the estimated Guideline range, and the consequences of pleading guilty. . . .
>
> 10. Prior to pleading guilty to Count 4, I met with Mr. Torres and informed him of the charge contained in the Indictment, the possible penalties, the estimated Guideline range, and the consequences of pleading guilty. . . .
>
> 11. . . . Mr. Torres never advised me he was innocent and wanted to go to trial. In my opinion had Mr. Torres gone to trial he would have been convicted. I do not recall ever advising Mr. Torres if he went to trial and lost, he would receive 30 years. I do not believe I ever made that statement to Mr. Torres.
>
> 12. Mr. Torres alleges I coerced him into pleading guilty, by advising him he would be sentenced to 30 years if he went to trial and lost. Prior to the November 5 and 14, 2019, change of plea hearings, I informed Mr. Torres of the charges against him, and the Sentencing Guideline exposure associated with each count. I also communicated the consequences of pleading guilty, which included the right to a trial and that the decision to plead guilty was only his to make. I did not force Mr. Torres, threaten Mr. Torres, or promise Mr. Torres anything in order to get him to plead guilty.

[CR Doc. 117-1 at 1-2].

In addition, the following exchange took place at the change of plea hearing before Judge Shreder on November 5, 2019:

> THE COURT: Is your plea of guilty made voluntarily and completely of your own free choice?
>
> DEFENDANT: Yes.
>
> THE COURT: Have you been forced or threatened in any way, or promised anything by any person to plead guilty?
>
> DEFENDANT: No.
>
> THE COURT: Has any officer or agent of any branch of the federal, state or local governments promised, suggested or predicted you would receive a lighter sentence or probation, or any other form of leniency if you plead guilty?
>
> DEFENDANT: No.
>
> THE COURT: If someone had made such a promise, suggestion or prediction, do you understand he or she had no authority to do so?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you understand the sentence you'll receive is solely a matter within the control of the sentencing judge after considering the federal sentencing guidelines?
>
> DEFENDANT: Yes.
>
> THE COURT: And the court assumes that you hope to receive leniency, but are you prepared to accept any punishment permitted by law which the court sees fit to impose?
>
> DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Are you satisfied with Mr. Hart's services?
>
> DEFENDANT: Yeah.
>
> THE COURT: Do you believe that he's done all that anyone could do as counsel to assist you in this case?
>
> DEFENDANT: Yeah.
>
> THE COURT: You were kind of hesitant about that, Mr. Torres.  Is there something you want to tell me?

DEFENDANT: No, sir.

THE COURT: Good. Understanding your rights then, in particular your constitutional right to a jury trial, is it now your wish to waive or give up that right?

DEFENDANT: Yes.

THE COURT: And that would be as to Counts 1 and 2 and 5; is that correct?

DEFENDANT: Yes, sir.

[CR Doc. 111 at 13-16].

Similarly, the following exchange took place at the change of plea hearing before Judge Shreder on November 14, 2019:

THE COURT: Is your plea of guilty made voluntarily and completely of your own free choice?

DEFENDANT: Yes.

THE COURT: Have you been forced or threatened in any way, or promised anything by any person to plead guilty?

DEFENDANT: No.

THE COURT:  Has any officer or agent of any branch of the federal, state or local governments promised, suggested or predicted you would receive a lighter sentence - -

DEFENDANT: No.

THE COURT: - - or probation, or any other form of leniency?

DEFENDANT: No, sir.

THE COURT: If someone had made such a promise, suggestion or prediction, do you understand he or she had no authority to do so?

DEFENDANT: Yes, sir.

THE COURT: Do you understand the sentence you'll receive is solely a matter within the control of the sentencing judge after considering the federal sentencing guidelines?

DEFENDANT: Yes, sir.

THE COURT: And the court assumes that you hope to receive leniency, but are you prepared to accept any punishment permitted by law which the court sees fit to impose?

DEFENDANT: Yes, sir.

. . .

THE COURT: Are you satisfied with Mr. Hart's services?

DEFENDANT: Yes.

THE COURT: Do you believe that he's done all that anyone could do as counsel to assist you in this case?

DEFENDANT: Yes, sir.

THE COURT: Understanding your rights then, in particular your constitutional right to a jury trial, is it now your wish to waive or give up that right?

DEFENDANT: Yes.

THE COURT: I see that you have signed the waiver of jury trial form.  Mr. Hart has signed it.  Ms. McAmis has indicated the government's consent.  Do you have any questions about waiving your right to a jury before I sign this?

DEFENDANT: No.

THE COURT:  I want to ask you again, understanding the nature of the charges against you and the effect and consequences of your plea, how do you plead; guilty or not guilty?

DEFENDANT:  Guilty.

THE COURT: That's as to Count 4; is that correct?

DEFENDANT: Yes.

[CR Doc. 112 at 11-14].

At sentencing, the undersigned made inquiry of Defendant as to his change of pleas before the magistrate judge, and Defendant and counsel responded confirming the consent.  [CR Doc. 97].   The court affirmed the findings of guilt and acceptance of pleas taken by the magistrate judge.  *Id.*

In summary, Defendant's allegation that he was coerced to plead guilty is not supported by the record.  Defendant's claim is also in direct contrast to Mr. Hart's affidavit.  Defendant has

not shown that counsel's performance was deficient. Nor has he satisfied the prejudice requirement under *Strickland*. *See Hill*, 474 U.S. at 59 ("The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

As noted by the Government, it is unlikely that a jury would have found Defendant not guilty given the weight of the evidence the Government would have presented at trial. Defendant pleaded guilty to Counts 1, 2, 4 and 5 of the Indictment. Defendant received a three-level reduction to his offense level for acceptance of responsibility. Count 3 was dismissed. Defendant was committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 125 months on Count 1, 125 months on Count 2, 84 months on Count 4, and 120 months on Count 5, with the terms of imprisonment on Counts 1, 2, and 5 to be served concurrently, and the term of imprisonment on Count 4 to be served consecutive to Counts 1, 2, and 5. Defendant is presently serving a total sentence of 209 months. Had he gone to trial and been convicted of the same counts, he likely would not have received a reduction to his offense level for acceptance of responsibility, and he would have been facing a total sentence of 252 months to 294 months in prison. Defendant has failed to meet his burden under *Strickland*.[5]

### *Alleged Violation of the Attorney-Client Privilege*.

Defendant next contends that "[a]fter Mr. Torres plead guilty his Counsel violated attorney and client privilege by giving legal documents" to Defendant's family without consent. [CR Doc. 104-2 at 2]. In response, the Government notes that "Defendant has failed to attach, document, or specify what legal documents were provided by Mr. Hart to Defendant's family." [CR Doc. 117 at 22]. The Government further points out that the alleged violation of the

---

[5]     "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee v. United States*, 582 U.S. 357, 367 (2017).

attorney-client privilege happened *after* he had entered his pleas of guilty, and that the alleged violation therefore had no effect on the Defendant's decision to plead guilty. *Id*.

Defendant's ineffective assistance claim regarding the alleged violation of attorney-client privilege is conclusory. The court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Defendant has not satisfied the *Strickland* test.

<u>Alleged Misinformation Regarding Sentencing Guideline Exposure</u>.

Defendant also claims that, "[b]efore sentencing Mr. Torres found out that his first Attorney, Mr. Martin Hart misadvised him of his sentencing guidelines exposure if he went to trial and lost and if he plea [sic] guilty." [CR Doc. 104-2 at 2]. The Government contends the claim is contrary to the record. [CR Doc. 117 at 22]. The following exchange occurred at the change of plea hearing on November 5, 2019:

> THE COURT: Would the government please state the nature of the charges and the range of punishment.
>
> MS. McAMIS: Your Honor, it is the government's understanding that the defendant is only pleading guilty to Count 1, 2 and 5 of the indictment. And with respect to that, Count 1 alleges kidnapping in violation of 18 U.S.C., Section 1201(a)(1). And if convicted, the defendant faces imprisonment for any term of years up to life; a fine of up to $250,000, or both; and supervised release of not more than five years; and a $100 mandatory special assessment.
>
> With respect to Count 2, the indictment alleges interference with commerce by robbery, a violation of 18 U.S.C., Section 1951(a). And if convicted, the defendant faces imprisonment for not more than 20 years; a fine of up to $250,000, or both; supervised release of not more than three years; and a $100 mandatory special assessment.
>
> With respect to Count 5, the indictment alleges felon in possession of firearm in violation of 18 U.S.C., Sections 922(g)(1) and 924(a)(2). And if convicted, the defendant faces imprisonment for not more than ten years; a fine of up to $250,000, or both; supervised release of not more than three years; and a $100 mandatory special assessment.
>
> . . .

16

THE COURT: That's fine. Mr. Torres, did you hear the government's announcement of the charges?

DEFENDANT: Yes.

THE COURT: Do you understand both the charges against you and the punishment for the charges?

DEFENDANT: Yes.

THE COURT: And do you understand, sir, also that the government intends to proceed to trial on the ones you're not pleading guilty to?

DEFENDANT: Yes.

THE COURT: Okay. Just to be sure, I want to go over the punishment part on those three that you're pleading guilty to with you. The government's informed me and I now tell you that Count 1 is punishable by a term of imprisonment of up to life; a fine of up to $250,000, or both such fine and imprisonment; a discretionary term of supervised release of not more than five years; and a mandatory special assessment of $100.

Count 2 is punishable by a term of imprisonment of up to 20 years; a fine of up to $250,000, or by both such fine and imprisonment; a discretionary term of supervised release of not more than three years; and a mandatory special assessment of $100.

Count 1 is punishable -- Count 5 is punishable by a term of imprisonment of up to ten years; a fine of up to $250,000, or by both such fine and imprisonment; a discretionary term of supervised release of not more than three years; and a mandatory special assessment of $100.

. . .

Ms. McAmis, what is the government's estimate of the possible sentence under the sentencing guidelines?

MS. McAMIS: Under the sentencing guidelines, Your Honor, with respect to Count 1 and 2, the advisory guideline range, without acceptance of responsibility, is between 235 and 293 months. And with respect to Count 5, without acceptance of responsibility, is between 51 and 63 months.

THE COURT: Do you agree with those estimates, Mr. Hart?

MR. HART: I don't, Your Honor. But I understand how she arrives at that.

THE COURT: Okay. Your estimates are somewhat less?

MR. HART: Yes, sir.

THE COURT: Okay. Mr. Torres, you heard what the lawyers have told me about your possible sentence under the sentencing guidelines?

DEFENDANT: Yes.

THE COURT: Have you talked to Mr. Hart about what the federal sentencing guidelines are all about?

DEFENDANT: Can I –

THE COURT: Yes, go ahead.

DEFENDANT: Okay. Yeah.

THE COURT: You haven't had a chance to talk to him about that?

DEFENDANT: Yes, I have.

THE COURT: Do you understand that those guidelines, your judge -- your sentencing judge has to take them into consideration at your sentencing, but he doesn't necessarily have to follow them. Do you understand that, sir?

DEFENDANT: Yes.

THE COURT: Do you understand it is possible he'll give you a longer sentence than what they are predicting?

DEFENDANT: Yes.

THE COURT: Good. Are you prepared to enter a plea today, Mr. Torres?

DEFENDANT: Yes.

THE COURT: How do you plead; guilty or not guilty?

DEFENDANT: Guilty.

THE COURT: That's as to Counts 1, 2 and 5; is that correct?

DEFENDANT: Yes, sir.

THE COURT: Have you told Mr. Hart everything you know about these charges against you?

DEFENDANT: Yes.

THE COURT: Do you believe that he's fully informed on all these matters?

DEFENDANT: Yes.

[CR Doc. 111 at 5-10].

Moreover, the following exchange occurred at the change of plea hearing on November 14, 2019:

THE COURT: Would the government please state the nature of the charges and the range of punishment.

MS. McAMIS: Yes, Your Honor. For the purposes of the record, the defendant has previously appeared in front of you and entered a plea with respect to Counts 1, 2 and 5. And this today is just with respect to Count 4.

And for that, the defendant is charged with use, carry and brandish a firearm during and in relation to a crime of violence pursuant to 18 U.S.C., Section 924(c)(A)(1)(ii). And if convicted, the punishment for that is imprisonment for not less than seven years consecutive to Counts 1, 2 and 5; a fine of up to $250,000, or both; and supervised release of not more than five years; and $100 mandatory special assessment.

. . .

THE COURT: Mr. Torres, did you hear the government's announcement of the charges?

DEFENDANT: Yes.

THE COURT: Do you understand both the charge against you and the punishment for the charge?

DEFENDANT: Yes.

THE COURT: Just to be sure, I want to go over the punishment part of that with you again. The government has informed me and I now tell you that Count 4 is punishable by a term of imprisonment of not less than seven years; a fine of up to $250,000, or by both such fine and imprisonment; a

discretionary term of supervised release of not more than five years; and a mandatory special assessment of $100.

The term of imprisonment on Count 4 shall run consecutive to Counts 1, 2 and 5 to which you previously entered a guilty plea.

. . .

What is the government's estimate of the possible sentence under the sentencing guidelines, Ms. McAmis?

MS. McAMIS: Seven years consecutive to Counts 1, 2 and 5.

THE COURT: Mr. Hart, do you agree that's how it will go?

MR. HART: I agree, Your Honor.

THE COURT: Mr. Torres, we talked about this before, but you heard what the lawyers have told me about your sentence under the sentencing guidelines?

DEFENDANT: Yes, sir.

THE COURT: You and Mr. Hart have talked about what the federal sentencing guidelines are all about?

DEFENDANT: Yes, sir.

THE COURT: Do you understand that your sentencing judge has to take those guidelines into account, but doesn't necessarily have to follow them?

DEFENDANT: Yes.

THE COURT: You understand it is possible he'll give you a longer sentence than what they're predicting?

DEFENDANT: Yes.

THE COURT: Good. Are you prepared to enter a plea today, sir?

DEFENDANT: Yes, sir.

THE COURT: And how do you plead; guilty or not guilty?

DEFENDANT: Guilty.

THE COURT: That's as to Count 4; is that correct?

DEFENDANT: Yes.

THE COURT: Have you told Mr. Hart everything you know about this charge against you?

DEFENDANT: Yes.

THE COURT: Do you believe that he's fully informed on all these matters?

DEFENDANT: Yes, sir.

[CR Doc. 112 at 5-8].

And again, as noted above, Mr. Hart states as follows:

9.      Prior to pleading guilty to Counts 1, 2, and 5, I met with Mr. Torres numerous times and informed him of the charges contained in the Indictment, the possible penalties, the estimated Guideline range, and the consequences of pleading guilty. . . .

10.     Prior to pleading guilty to Count 4, I met with Mr. Torres and informed him of the charges contained in the Indictment, the possible penalties, the estimated Guideline range, and the consequences of pleading guilty. . . .

11.     . . . In my opinion had Mr. Torres gone to trial he would have been convicted.  I do not recall ever advising Mr. Torres if he went to trial and lost, he would receive 30 years.  I do not believe I ever made that statement to Mr. Torres.

[CR Doc. 117-1 at 1-2].

Defendant claims that, before sentencing, he found out that Mr. Hart misadvised him of his sentencing guidelines exposure.  Defendant, however, was informed of the sentencing exposure for each count of the Indictment at the change of plea hearings, meaning Defendant has failed to prove prejudice under *Strickland*.[6]  Defendant's claim is also contradicted by counsel's affidavit.  The Government contends, and the court agrees, that "[t]he record in this case clearly establishes Mr. Hart acted in a reasonably professional manner throughout his representation of

---

[6]     As noted above, to prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  Courts should "remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors[.]"  *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013).

Defendant." [CR Doc. 117 at 28]. Defendant's claim of ineffective assistance of counsel must be denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 104; CV Doc. 1] is hereby DENIED.[7] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 15th day of July, 2024.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[7]     The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.